[Cite as *State v. Sims*, 2017-Ohio-8379.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160856 |
| | | TRIAL NOS. C-16TRD-28152A |
| Plaintiff-Appellee, | : | C-16TRD-28152B |
| | | C-16TRD-28152C |
| vs. | : | C-16TRD-28152D |
| SHAWNTEL SIMS, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Curt

Judgments Appealed From Are: Affirmed in Part; Appeal Dismissed in Part

Date of Judgment Entry on Appeal: November 1, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Demetra Stamatakos*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}    In this appeal, defendant-appellant Shawntel Sims argues that the trial court lacked jurisdiction to accept his no-contest pleas without first obtaining a written waiver of his right to a jury trial pursuant to R.C. 2945.05, and that the trial court erred in denying his motion to suppress.

{¶2}    Because the trial court was not required to obtain a written waiver of Sims's right to a jury trial before accepting his no-contest pleas, and because it properly denied his motion to suppress, we find Sims's arguments to be without merit.

### *Facts and Procedure*

{¶3}    Sims was stopped for a tinted-window violation.  In addition to being cited for that violation, he received citations for driving under an OVI suspension, a safety-restraint violation, and driving under a financial-responsibility-law suspension.  All citations were for "petty offenses" under Ohio law.  Crim.R. 2(D).[1]

{¶4}    For a petty offense, a defendant is not automatically entitled to a trial by jury.  Rather, he must make a written demand.  Crim.R. 23(A).  In this case, Sims filed a timely jury demand with the trial court.  He also filed a motion to suppress. Following the trial court's denial of his motion to suppress, Sims entered no-contest pleas to all charges.  The trial court accepted Sims's pleas and found him guilty.  For the offense of driving under an OVI suspension, the trial court sentenced Sims to 180

---

[1] While there was some confusion on the record at the time of sentencing as to whether Sims had prior convictions that would elevate the offense, the parties and the court ultimately treated the offense of driving under an OVI suspension as a petty offense that carried a maximum sentence of 180 days' incarceration.

days in jail and imposed a $500 fine and court costs. For the offense of driving under a financial-responsibility-law suspension, the trial court sentenced Sims to 30 days in jail and imposed a $10 fine and costs. For the safety-restraint and tinted-window violations, the trial court only imposed costs.

### *Lack of Final Appealable Orders*

{¶5} Before proceeding to the merits of Sims's arguments, we must examine our jurisdiction to entertain this appeal. This court only has jurisdiction to review final orders and judgments. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2505.03.

{¶6} A judgment of conviction is a final order under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus; *State v. Bennett*, 1st Dist. Hamilton Nos. C-140507 and C-140508, 2015-Ohio-3246, ¶ 4; Crim.R. 32(C). Each of these requirements must be contained in a single document. *State v. Daniels*, 1st Dist. Hamilton No. C-140242, 2014-Ohio-5160, ¶ 7, citing *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 17.

{¶7} In *Bennett*, we held that while required by law to be imposed, court costs are not a criminal punishment and do not constitute a sanction that can be imposed as a sentence. *Bennett* at ¶ 4-5. In this case, the trial court imposed a jail term and a fine for the offenses of driving under an OVI suspension and driving under a financial-responsibility-law suspension. But for the safety-restraint and tinted-window violations, it imposed costs only. Consequently, no sentence was

imposed for these offenses and the entries appealed from with respect to them are not final and appealable orders. We accordingly dismiss the appeal with respect to the safety-restraint and tinted-window violations.

*Jury Waiver*

{¶8}    In his first assignment of error, Sims argues that the trial court lacked jurisdiction to accept his no-contest pleas because it failed to obtain a valid jury waiver pursuant to R.C. 2945.05. Sims had secured his right to a jury trial for these petty offenses by filing a timely written demand with the court as required by Crim.R. 23(A). In support of his argument that a written waiver was required, Sims cites this court's decision in *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995).

{¶9}    In *Fish*, this court considered the same issue that we are presented with in this case: must a trial court, before accepting a no-contest plea to a petty offense after a timely jury demand has been filed, first obtain a written waiver of the right to a jury trial? In answering that question in the affirmative, the *Fish* court relied on two cases from the Supreme Court of Ohio. The first was *State v. Tate*, 59 Ohio St.2d 50, 391 N.E.2d 738 (1979), which held that a trial court cannot try a defendant in a petty-offense case where a jury trial has been demanded without first obtaining a written jury waiver in accordance with R.C. 2945.05. The second case relied upon was *State ex rel. Jackson v. Dallman*, 70 Ohio St.3d 261, 638 N.E.2d 563 (1994), where the court held that "[t]here must be strict compliance with R.C. 2945.05 for there to be a waiver of a right to a jury trial; where the record does not reflect strict compliance, the trial court is without jurisdiction to try the defendant without a jury." The *Fish* court held that:

These cases dealt with instances where a trial court proceeded to try a defendant without a jury waiver, but we perceive no difference in the situation here—once the defendant has properly demanded a jury trial in a petty case, the court simply cannot proceed to trial, *or even to a finding of guilty after a no-contest plea*, without a written jury waiver, signed by the defendant and made part of the record.

(Emphasis added.) *Fish* at 239.

{¶10} A review of the plain language of R.C. 2945.05, along with case law from this district, other Ohio appellate districts, and the Supreme Court of Ohio, convinces us that the *Fish* court erred in holding that a trial court must obtain a written jury waiver before accepting a no-contest plea to a petty offense where a timely jury demand had been filed.

{¶11} R.C. 2945.05 provides: "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be *tried* by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof." (Emphasis added.) The statute clearly provides that a defendant must file a written jury waiver before she or he may "be tried by the court." But it does not similarly require a waiver before a trial court may accept a plea of guilty or no contest.

{¶12} Numerous courts in Ohio have declined to expand the requirements of R.C. 2945.05 to guilty and no-contest pleas. In *Martin v. Maxwell*, 175 Ohio St. 147, 191 N.E.2d 838 (1963), the Supreme Court of Ohio held that "[t]he provisions of Section 2945.05, Revised Code, requiring the filing of a written waiver of a trial by jury are not applicable where a plea of guilty is entered by an accused." This court

has reached the same conclusion in the context of a guilty plea. In *State v. Kinebrew*, 1st Dist. Hamilton No. C-060769, 2008-Ohio-812, ¶ 3, we held that "[t]he mandates of R.C. 2945.05, requiring the filing of a written waiver of a trial by jury, are not applicable when an accused enters a plea of guilty." And in *State v. Barber*, 1st Dist. Hamilton No. C-981021, 1999 WL 1488979, *1 (Nov. 17, 1999), we held that "R.C. 2945.05 applies only in those situations when the defendant waives his right to a jury trial and elects to have his case tried to the bench."

{¶13} Other appellate districts have reached similar conclusions, specifically with respect to no-contest pleas. *See Ashtabula v. Jones*, 11th Dist. Ashtabula No. 2016-A-0053, 2017-Ohio-1103, ¶ 26 (rejecting defendant's argument that the trial court was required to obtain a written jury waiver before accepting a no-contest plea); *Cleveland v. Brisbane*, 2016-Ohio-4564, 70 N.E.3d 52, ¶ 45-46 (8th Dist.) (trial court did not err in failing to obtain a written jury waiver before accepting a no-contest plea because "the entrance of a guilty or no-contest plea constitutes a waiver of a right to a jury trial"); *State v. Rice*, 5th Dist. Stark No. 2013CA00197, 2014-Ohio-3487, ¶ 30 ("The trial court was not required to accept a written waiver of the jury demand prior to accepting appellant's plea of no contest"); *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 424, 662 N.E.2d 370 (1996) (a no-contest plea waives the defendant's right to a jury trial).

{¶14} We see no reason to distinguish guilty pleas and no-contest pleas. While a guilty plea is an admission of guilt, and a no-contest plea is only an admission of the truth of the facts contained in the indictment or complaint, this does not convert a no-contest plea into a trial by the court. It cannot be said in such a case that the defendant is being "tried by the court without a jury." Rather, without

determining any facts in dispute, the court simply determines whether the admitted facts met all the elements of the charged offense. Just as in guilty-plea cases, the court then enters a finding of guilt. This does not rise to the level of being "tried" by the court.

{¶15} Consequently, we hold that after a timely jury demand has been filed for a petty offense, the trial court need not obtain a written jury waiver before accepting a no-contest plea. To the extent that *Fish* held that a trial court was required to obtain a written waiver before accepting a no-contest plea in such a situation, it is overruled.

{¶16} In this case, because no written jury waiver was required, the trial court did not lack jurisdiction to accept Sims's no-contest pleas. And we note that the record indicates that Sims was in fact aware that his no-contest pleas would result in a waiver of trial by jury, as the trial court explicitly informed him, prior to accepting the pleas and finding him guilty, that the entrance of the no-contest pleas would result in him giving up his right to a trial. *See Mascio*, 75 Ohio St.3d at 424, 662 N.E.2d 370.

{¶17} The first assignment of error is overruled.

### Motion to Suppress

{¶18} In his second assignment of error, Sims argues that the trial court erred in denying his motion to suppress. He specifically contends that the officer who issued his citations lacked reasonable suspicion to stop him for a window-tint violation.

{¶19} Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-

5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the application of the relevant law to those facts. *Id.*

{¶20} Under the Fourth Amendment, a traffic stop is lawful if an officer has a reasonable and articulable suspicion, under the totality of the circumstances, that a traffic violation has occurred. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Foster*, 1st Dist. Hamilton No. C-160424, 2017-Ohio-4036, ¶ 16.

{¶21} The following evidence was adduced at a hearing on Sims's motion to suppress. Hamilton County Sheriff's Deputy Mike Stenger testified that on June 17, 2016, he had been observing traffic while stationed in a parking lot in Silverton. Deputy Stenger saw a two-door vehicle approaching and observed that the vehicle's passenger-side window had a dark tint. He could see two passengers in the vehicle through the front windshield, but it was nearly impossible to see inside the vehicle or to discern the facial features of the vehicle's occupants through the passenger window. Deputy Stenger initiated a traffic stop of the vehicle being driven by Sims, believing there was a tint violation. He took a reading of the tint on the passenger window with a tint meter, which he explained was a certified calibrated device used to determine the percentage of tint, or the light transparency, on the window. Deputy Stenger testified that the tint meter indicated that approximately 84 percent of the light coming through the window was blocked by the tint. He found the vehicle to be in violation and issued a citation.

{¶22} In denying Sims's motion to suppress, the trial court found that Deputy Stenger had found it almost impossible to see inside the vehicle and had been unable to identify any specific characteristics of the vehicle's occupants from the passenger's side. The court concluded that "the officer was justified in initiating the traffic stop based upon what he perceived to be as a window tint violation."

{¶23} Sims contends that Deputy Stenger committed a mistake of fact when initiating the traffic stop based on a window-tint violation, and that the trial court's finding that the deputy could not see inside the window was against the manifest weight of the evidence. He argues that Deputy Stenger's testimony interpreting the results of the tint-meter reading was incorrect, and that the tint meter had actually indicated that the window allowed 84 percent of the light to pass through, rather than blocked 84 percent of the light.

{¶24} The trial court's finding that the deputy could not see inside the passenger window was supported by competent and credible evidence. Even if Sims's argument that Deputy Stenger wrongly interpreted the results displayed by the tint meter is correct, we find that the deputy nonetheless had a reasonable suspicion to stop the vehicle. Deputy Stenger was not required to "correctly predict that a conviction will result," and a determination as to whether Sims could ultimately be found guilty of a window-tint violation was not determinative of whether the deputy had reasonable suspicion to conduct a traffic stop. *See State v. Burnett*, 1st Dist. Hamilton Nos. C-110565, C-110566 and C-110567, 2012-Ohio-1631, ¶ 8, citing *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15.

9

{¶25} Based on his observation that it was nearly impossible to see inside the passenger window and that he could not discern any facial features of the vehicle's occupants through that window, we find that, under the totality of the circumstances, Deputy Stenger had a reasonable suspicion to believe that a traffic violation may have occurred. Thus, the stop was proper.

{¶26} The trial court did not err in denying Sims's motion to suppress. The second assignment of error is accordingly overruled.

{¶27} In summary, the appeal is dismissed with respect to the safety-restraint and tinted-window violations. The trial court's judgments finding Sims guilty of driving under an OVI suspension and driving under a financial-responsibility-law suspension are affirmed.

Judgment accordingly.

**MOCK, P.J.,** and **CUNNINGHAM, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.