[Cite as *State v. Wallace*, 2023-Ohio-3014.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

CHRISTOPHER G. WALLACE,

    DEFENDANT-APPELLANT.

CASE NO. 7-23-04

O P I N I O N

**Appeal from Henry County Common Pleas Court**
**Trial Court No. 22 CR 0006**

**Judgment Affirmed**

**Date of Decision: August 28, 2023**

APPEARANCES:

    *Laurel A. Kendall* **for Appellant**

    *Gwen Howe-Gebers* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Christopher G. Wallace ("Wallace") appeals the judgment of the Henry County Court of Common Pleas, arguing that the trial court failed to substantially comply with Crim.R. 11; failed to ensure all the relevant information about his Tier III Sex Offender Classification was in his written plea form; and erred by denying his request to withdraw his guilty plea. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On February 23, 2022, Wallace was indicted on one count of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), a second-degree felony; two counts of sexual battery in violation of R.C. 2907.03(A)(2), third-degree felonies; and one count of sexual battery in violation of R.C. 2907.03(A)(1), a third-degree felony. On September 22, 2022, Wallace pled guilty to one count of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), a second-degree felony, and one count of sexual battery in violation of R.C. 2907.03(A)(2), a third-degree felony. As part of a plea agreement, the remaining two charges in the indictment were to be dismissed.

{¶3} On November 8, 2022, Wallace appeared before the trial court for sentencing. However, he made an oral motion to withdraw his prior guilty plea. The trial court then held a hearing on Wallace's motion to withdraw his guilty plea on December 20, 2022. On January 6, 2023, the trial court issued a judgment entry

that denied Wallace's motion to withdraw his guilty plea. On February 9, 2023, the

trial court issued its judgment entry of sentencing. In this entry, the trial court found

that Wallace should be classified as a Tier III Sex Offender.

{¶4} Wallace filed his notice of appeal on March 2, 2023. On appeal, he

raises the following three assignments of error:

### First Assignment of Error

**Appellant's guilty plea was not knowing and voluntary when the trial court failed to substantially comply with Crim.R. 11 by failing to inform appellant of all of the punitive consequences of his plea.**

### Second Assignment of Error

**Appellant's sex offender classification is void because there is no information concerning the classification in the plea form, and the sentencing entry contains only information about sex offender registration requirements.**

### Third Assignment of Error

**The trial court abused its discretion when it denied appellant's motion to withdraw his guilty plea before sentencing based on new evidence.**

*First Assignment of Error*

{¶5} Wallace argues that his guilty plea was not knowing or voluntary made

because the trial court failed to substantially comply with Crim.R. 11 by fully

explaining to him the residential restrictions and community notification

requirements for Tier III Sex Offenders.

Legal Standard

**{¶6}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450, 451 (1996). "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *Id.* Crim.R. 11(C)(2) directs trial courts to engage in a colloquy with a defendant before accepting a guilty or no contest plea in a felony case. This colloquy is designed to ensure that a plea is knowingly, intelligently, and voluntarily made. *State v. Phipps*, 2021-Ohio-258, 167 N.E.3d 576, ¶ 6 (3d Dist.).

**{¶7}** Crim.R. 11(C)(2)(a), requires a trial court, in addition to determining that a plea is voluntarily made, to ensure that the defendant understands the nature of the charges; the maximum penalty involved; and that probation or community control are not available at sentencing if the defendant is not eligible for such sanctions. Crim.R. 11(C)(2)(b) requires a trial court to inform the defendant of the effects of a guilty or no contest plea and of the fact that it may proceed to judgment and sentencing after accepting the plea. Crim.R. 11(C)(2)(c) requires a trial court to inform a defendant of various constitutional rights that are waived when a guilty or no contest plea is entered.

**{¶8}** In general, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765,

-4-

164 N.E.3d 286, ¶ 16. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id*., quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476 (1990). However, the Ohio Supreme Court has delineated two exceptions to this general rule. *Dangler* at ¶ 16.

{¶9} First, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Dangler* at ¶ 15. Second, "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest" as required by Crim.R. 11(C)(2)(c), the defendant's plea is presumed to have been "entered involuntarily and unknowingly, and no showing of prejudice is required." *Id*. at ¶ 14.

{¶10} Thus, the Ohio Supreme Court has explained the analysis of an appellate challenge based upon Crim.R. 11(C)(2) as involving three main questions: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler, supra*, at ¶ 17.

## Legal Analysis

{¶11} On appeal, Wallace argues that the trial court did not adequately explain each of the Sex Offender Registration and Notification ("SORN") requirements to which he would be subject if he pled guilty in this case. In *State v.*

*Williams*, the Ohio Supreme Court concluded that the sex-offender classification system in "R.C. Chapter 2950 is punitive" while noting that "some elements" were remedial. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, 20. For this reason, the SORN requirements are part of the maximum penalty that a trial court is to explain to a defendant pursuant to Crim.R. 11(C)(2)(a). *State v. Ulm*, 2022-Ohio-4741, 205 N.E.3d 19, ¶ 10 (2d Dist.); *State v. Tolle*, 2022-Ohio-2839, 194 N.E.3d 410, ¶ 37 (4th Dist.); *State v. Brown*, 2020-Ohio-4474, 158 N.E.3d 972, ¶ 27 (8th Dist.).

{¶12} During the Crim.R. 11 colloquy, the trial court informed Wallace that he would, "as a result of these offenses, be classified as a Tier III Sex Offender. That would include registration requirements." (Tr. 15). Because Wallace seemed to have been previously unaware of this penalty, the trial court granted a recess to give him time to confer with defense counsel about these SORN requirements and his decision to enter a plea. After this recess, the trial court stated that Wallace "would be a Tier III Sex Offender as a result of this offense and that would require him to register every 90 days for life." (Tr. 17).

{¶13} On appeal, Wallace notes that the trial court did not mention the community notification requirements or the residential restrictions that came with being a Tier III Sex Offender. He asserts that this represents a failure to comply with Crim.R. 11(C)(2)(a). In *Dangler*, the Ohio Supreme Court considered a case in which the trial court informed the defendant that "he would have to register as a

Tier III sex offender for the rest of his life" during the Crim.R. 11 colloquy. *Dangler*, *supra*, at ¶ 1. On appeal, defendant argued that the "trial court failed to comply fully" with Crim.R. 11(C)(2)(a) because it did not explain "the residency restrictions" and the "community-notification process" that would accompany his classification as a Tier III Sex Offender. *Id.* at ¶ 6.

{¶14} In its decision, the Ohio Supreme Court "encourage[d] trial courts to be thorough in reviewing consequences of a defendant's decision to enter a plea." *Dangler, supra*, at ¶ 25. A thorough review would include the consequences "stemming from classification as a sex offender: the duty to register and provide in-person verification, the community-notification provisions, and the residency restrictions." *Id*. However, it concluded that the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a) when it informed the defendant only that "he would be subject to the registration requirements" of the sex-offender-classification system but did not mention each SORN requirement that came with being subject to this system. *Dangler, supra*, at ¶ 22.

{¶15} In the case presently before us, Wallace raises the same argument as the defendant in *Dangler*, asserting that the trial court omitted any mention of the residency restrictions and community-notification requirements that would accompany his classification as a Tier III Sex Offender. *See Dangler, supra*, at ¶ 1. However, as in *Dangler*, the trial court did inform Wallace that he "would be a Tier III Sex Offender as a result of this offense and that would require him to register

every 90 days for life." (Tr. 17). *See Id.* at ¶ 4, 7. Given the similarities with *Dangler*, we apply its holding herein and conclude that the trial court did not completely fail to comply with the requirement to inform him of the "maximum penalty involved." Crim.R. 11(C)(2)(a).

{¶16} Next, Wallace has failed to demonstrate prejudice in this case. *See Dangler*, *supra*, at ¶ 23. The record indicates that, during the Crim.R. 11 colloquy, Wallace was upset after learning that he would be required to register as a Tier III Sex Offender. The trial court then ordered a recess to give Wallace time to consult with defense counsel about any questions he might have about the sex-offender-classification system and about whether he still wanted to plead guilty. After a fifteen-minute recess, the Crim.R. 11 colloquy continued as follows:

> [Trial Judge:] * * * When we broke I * * * had explained the maximum penalties and consequences of these pleas * * *. As the State indicated the defendant would be a Tier III Sex Offender as a result of this offense and that would require him to register every 90 days for life. Do you, did you have an opportunity, Mr. Wallace, to discuss this issue with Mr. Gerbitz?
>
> [Wallace:] Yes ma'am.
>
> [Trial Judge:] In light of the fact that you are finding out that you will be a registered Sex Offender, do you wish to continue?
>
> [Wallace:] Yeah, yes.
>
> [Trial Judge:] Do you need any additional time to talk to Mr. Gerbitz?
>
> [Wallace:] No.
>
> [Trial Judge:] Are you sure this is what you want to do?

-8-

[Wallace:]   Yeah.

(Tr. 17-18).  Wallace then entered a plea of guilty.  Given these facts, we cannot conclude that Wallace would not have pled guilty had he been given more information about the SORN requirements during the Crim.R. 11 colloquy.

**{¶17}** In conclusion, Wallace has failed to demonstrate that the trial court completely failed to comply with the requirements of Crim.R. 11(C)(2)(a).  Thus, his case did not fall within one of the exceptions delineated by the Ohio Supreme Court in *Dangler, supra*, at ¶ 14-15.  For this reason, he had to establish prejudice.  However, he has failed to advance an argument that demonstrates that he would not have pled guilty if he had been given more information about the SORN requirements during the Crim.R. 11 colloquy.  Accordingly, his first assignment of error is overruled.

*Second Assignment of Error*

**{¶18}** Wallace asserts that each of the SORN requirements should have been included in the plea agreement form and in the judgment entry of sentencing.

Legal Standard

**{¶19}** R.C. 2929.19(B) governs felony sentencing and provides, in its relevant part, the following:

> (3)(a) The court shall include in the offender's sentence a statement that the offender is a tier III sex offender/child-victim offender, and the court shall comply with the requirements of section 2950.03 of the Revised Code if any of the following apply:

-9-

* * *

> (ii) The offender is being sentenced for a sexually oriented offense that the offender committed on or after January 1, 1997, and the offender is a tier III sex offender/child-victim offender relative to that offense.

R.C. 2929.19(B)(3)(ii). *See also* R.C. 2929.23(A). In turn, R.C. 2950.03 addresses who is tasked with the responsibility of notifying an offender of the various SORN requirements and when such notification must be given. This provision reads, in its relevant part, as follows:

> (A) Each person who has been convicted of * * *or pleads guilty to a sexually oriented offense * * * and who has a duty to register pursuant to section 2950.04 or 2950.041 of the Revised Code * * * shall be provided notice in accordance with this section of the offender's * * * duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and of the offender's duties to similarly register, provide notice of a change, and verify addresses in another state if the offender resides, is temporarily domiciled, attends a school or institution of higher education, or is employed in a state other than this state. The following official shall provide the notice required under this division to the specified person at the following time:

> (1) Regardless of when the person committed the sexually oriented offense * * *, if the person is an offender who is sentenced to a prison term * * * the official in charge of the * * * state correctional institution * * * in which the offender serves the prison term * * * or a designee of that official, shall provide the notice to the offender before the offender is released pursuant to any type of supervised release or before the offender otherwise is released from the prison term * * *.

> (2) Regardless of when the person committed the sexually oriented offense or child-victim oriented offense, if the person is an offender who is sentenced on or after January 1, 2008 for any offense, and if

> division (A)(1) of this section does not apply, the judge shall provide the notice to the offender at the time of sentencing.

R.C. 2950.03(A)(1)-(2). Next, R.C. 2950.03(B)(1) addresses what must be included in this required notice. In short, R.C. 2950.03(B) generally

> provides for notice to convicted sex-offenders of their duty to register; to provide notice of a change in their residence address or in their school, institution of higher education, or place of employment address, as applicable, and register the new address; and, to periodically verify their residence address or their school, institution of higher education, or place of employment address, as applicable.

*State v. Hudson*, 2013-Ohio-647, 986 N.E.2d 1128, ¶ 49 (3d Dist.). R.C. 2950.03(B)(1)(a) states that the trial court

> shall require the offender to read and sign a form stating that the offender's duties to register, to file a notice of intent to reside, if applicable, to register a new residence address or new school, institution of higher education, or place of employment address, and to periodically verify those addresses, and the offender's duties in other states as described in division (A) of this section have been explained to the offender.

R.C. 2950.03(B)(1)(a).

Legal Analysis

**{¶20}** Wallace raises two arguments that allege errors in the process of notifying him of the SORN requirements. First, he asserts that the plea agreement form did not include information about the SORN requirements. However, he does not cite any legal authority that would establish that this was an error. Wallace only asserts that "a court of record speaks only through its journal entries." Appellant's Brief, 15, quoting *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844

N.E.3d 301, ¶ 30. He has not demonstrated how this legal maxim relates to a plea agreement form that was presented to the trial court.

**{¶21}** Further, even if this omission did constitute an error, Wallace cannot demonstrate that it was anything other than harmless. "Crim.R. 52(A) defines a harmless error as '[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.'" *State v. Tebelman*, 2023-Ohio-882, 211 N.E.3d 150, ¶ 35 (3d Dist.), quoting Crim.R. 52(A). "In most cases, in order to be viewed as 'affecting substantial rights,' 'the error must have been prejudicial.'" *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. "Harmless error does not affect the outcome of the case and, thus, does not warrant a judgment to be overturned or set aside." *State v. Wilson*, 3d Dist. Allen, No. 1-09-53, 2010-Ohio-2947, ¶ 26.

**{¶22}** The record indicates that Wallace was informed that he would be classified as a Tier III Sex Offender during the Crim.R. 11 colloquy at his change of plea hearing. In his brief, he also admits that the trial court informed him of the registration requirements. The trial court also ordered a recess to give him an opportunity to consult with defense counsel about the SORN requirements. After this recess, Wallace stated that he had been given enough time to consult with his attorney and that he wanted to proceed to pleading guilty. Given these facts, he cannot demonstrate that the outcome of this case would have been different had the

plea agreement form contained additional information about the SORN requirements. Thus, this first argument is without merit.

{¶23} Second, Wallace asserts that his SORN sanction is void because the trial court did not set forth in writing the residential and community notification restrictions in its judgment entry. He asserts that his argument is supported by *State v. Merritt*, 1st Dist. Hamilton No. C-170649, 2018-Ohio-4995, ¶ 1, 4. In *Merritt*, the trial court failed to include "the defendant's Tier III sex-offender classification in the sentencing entry * * *." *Id.* at ¶ 3. The defendant argued that his pleas were not voluntarily made because the trial court did not inform him of the community notification and residential restrictions. *Id.* at ¶ 1. However, the First District did not ultimately address this issue because it concluded that the trial court's failure to include his sex-offender classification in its judgment entry meant this sanction had never been imposed. *Id.* at ¶ 7.

{¶24} By contrast, in the case presently before us, the trial court included an order that Wallace was to be classified as a Tier III Sex Offender in its judgment entry in compliance with R.C. 2929.19(B)(3)(a). *See also* R.C. 2929.23(A). Thus, *Merritt* is distinguishable from this case. Wallace has not directed our attention to any legal authority that would require a full explanation of each individual SORN restriction to be included in a trial court's judgment entry. *See also State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 35 (1st Dist.).

-13-

**{¶25}** Further, at sentencing, the trial court provided Wallace with a form that detailed the various SORN requirements. The trial court went through these requirements with Wallace and then had him sign this form. R.C. 2929.19(B)(3)(a); 2950.03(B)(3)(a). Wallace has not demonstrated that the trial court erred in the process of imposing the penalties that are associated with the sex-offender classification system at sentencing. Thus, Wallace's second argument is without merit. Accordingly, his second assignment of error is overruled.

*Third Assignment of Error*

**{¶26}** Wallace argues that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

Legal Standard

**{¶27}** Under Crim.R. 32.1, a defendant may make a motion to withdraw a guilty plea before his or her sentence is imposed.

> 'A presentence motion to withdraw a guilty plea should be freely and liberally granted.' * * * A defendant does not, however, have an 'absolute right' to withdraw his or her plea, even when a motion to withdraw is made before sentencing.

*State v. Barnes*, --- Ohio St.3d ---, 2022-Ohio-4486, --- N.E.3d ---, ¶ 13, quoting *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

> Before ruling on a defendant's presentence motion to withdraw his plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea. [*Xie* at 527]. The determination whether there is a reasonable and legitimate basis for the defendant's request to withdraw his plea is 'within the sound discretion of the trial court.'

-14-

*Barnes* at ¶ 13, quoting *Xie* at paragraph two of the syllabus. For this reason, a trial court's ruling on a motion to withdraw a guilty plea will not be reversed in the absence of an abuse of discretion. *Id.*

**{¶28}** "An abuse of discretion is not merely an error of judgment." *State v. Costell*, 3d Dist. Union No. 14-21-02, 2021-Ohio-4363, ¶ 22, quoting *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 20 (3d Dist.). "Rather, an abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious." *State v. Kleman*, 3d Dist. Hardin No. 6-19-01, 2019-Ohio-4404, ¶ 18, quoting *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 23.

Legal Analysis

**{¶29}** In this case, Wallace argued that he changed his mind about his guilty plea after discovering new evidence that was related to this case. In reviewing a trial court's decision on a motion to withdraw a guilty plea, appellate courts have historically relied on a list of considerations that have generally included the following nine-factors:

> (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges.

*State v. Bingham*, 2019-Ohio-3324, 141 N.E.3d 614, ¶ 42 (3d Dist.). *See State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1995), *overruled on other grounds by State v. Sims*, 2017-Ohio-8379, 99 N.E.3d 1056 (1st Dist.); *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist. 1980).

**{¶30}** However, in *State v. Barnes*, the Ohio Supreme Court did not apply the nine-factor analysis typically applied by appellate courts in cases involving a motion to withdraw a guilty plea. In *Barnes*, the defendant and two other people exchanged gunfire in an altercation that killed one bystander and injured two others. *Barnes, supra*, at ¶ 3-4. After pleading guilty to the resulting charges, the defendant asserted that he became aware of video footage that recorded the altercation. *Id*. He moved to withdraw his guilty plea as he believed this footage could establish that he had acted in self-defense. *Id*. The trial court denied his motion to withdraw his guilty plea. *Id*.

**{¶31}** After the Eighth District affirmed the trial court's decision, the Ohio Supreme Court took up this case to consider the following proposition of law:

> A defendant has a reasonable and legitimate basis to withdraw a guilty plea before sentencing, upon learning of evidence that: (1) was previously withheld from the defendant; and (2) would have changed the defendant's decision to plead guilty.

*Barnes, supra,* at ¶ 12. In resolving this question, the Ohio Supreme Court concluded that, "when a defendant discovers evidence that would have affected his

-16-

decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." (Emphasis added.) *Id*. at ¶ 24.

**{¶32}** Since *Barnes* was decided, several appellate courts have noted that the Ohio Supreme Court did not entirely reject the nine-factor test that appellate courts have typically applied in evaluating motions to withdraw guilty pleas. *State v. Wroten*, 2023-Ohio-966, 211 N.E.3d 842, ¶ 31 (2d Dist.); *State v. Kohler*, 5th Dist. Delaware No. 22 CAA 10 0068, 2023-Ohio-1772, ¶ 14; *State v. Grier*, 6th Dist. Lucas No. L-21-1263, 2023-Ohio-207, ¶ 26; *State v. Johnson*, 8th Dist. Cuyahoga No. 111448, 2023-Ohio-371, ¶ 43. Rather, the Ohio Supreme Court held that these "factors do not apply *here*." (Emphasis added). *Barnes, supra*, at ¶ 24. For this reason, a number of our sister districts have held that the nine-factor analysis continues to apply outside of cases that are factually similar to *Barnes*. *Wroten* at ¶ 31; *Grier* at ¶ 26; *Kohler* at ¶ 15; *Johnson* at ¶ 44-45.

**{¶33}** Turning to the case presently before us, Wallace testified at the hearing on his motion to withdraw that he had discovered new evidence after he pled guilty and that he would not have pled guilty if he had known about this evidence. On appeal, he argues that the trial court erred by denying his motion to withdraw because of the new evidence provided. Thus, his challenge is of the type that was addressed in *Barnes*, so we will apply the analysis set forth therein. *Barnes, supra,* at ¶ 24.

**{¶34}** At the hearing on the motion to withdraw his guilty plea, Wallace testified that, at some point, his friend's nephew, Sam Vold ("Vold"), was a classmate of the seventeen-year-old victim. Wallace testified that the victim had told Vold that he wanted to "take advantage" of Wallace. (Tr. 5). Vold did not testify at the hearing on the motion to withdraw the guilty plea. The Defense simply presented the trial court with an unsworn statement from Vold that contained one sentence of hearsay: the victim "made the statement to me, Sam Vold, that he was going to take advantage of Chris Wallace to get whatever he could." (Doc. 41, Ex. A).

**{¶35}** However, Wallace never explained what this alleged statement meant in the context of this case. The record is devoid of any contextual information that could explain its potential relevance to the charges in this case. The trial court did "not accept this exhibit as evidence." (Doc. 41). The trial court then found that "this bare statement is ambiguous at best and does not constitute newly discovered evidence." *Id.* Further, even if this unsworn statement were admissible evidence, Wallace has not provided any explanation as to how this statement affected the substance of his case or would have affected his decision to plead guilty.

**{¶36}** By contrast, the defendant in *Barnes* had consistently maintained that he had acted in self-defense and identified a piece of evidence that could arguably provide some corroboration for this defense. *Barnes, supra*, at ¶ 23. The Ohio Supreme Court also noted that the defendant did not plead guilty "because there was

-18-

evidence that he actually committed the crime." *Id*. at ¶ 26. Rather, the defendant pled guilty because "he believed there was no evidence that corroborated his self-defense claim." *Id.* at ¶ 26. Thus, the defendant provided an explanation as to how his decision to plead guilty would have been affected by prior knowledge of the identified evidence. Given these facts, we conclude that *Barnes* is distinguishable from the case presently before us, even though Wallace purports to have discovered evidence that would have affected his decision to plead guilty.

{¶37} In conclusion, while Wallace alleged that he discovered new evidence that would have affected his decision to plead guilty, he failed to substantiate these assertions before the trial court and on appeal. Thus, we cannot conclude that the trial court abused its discretion in denying Wallace's motion to withdraw his guilty plea. Accordingly, his third assignment of error is overruled.

*Conclusion*

{¶38} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Henry County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**MILLER, P.J. and WALDICK, J., concur.**

**/hls**